## NECKERMAN *v.* SAUNDERS.

---

### Patents; Interference; Reduction to Practice.

In an interference involving an invention relating to a pipe-drawing apparatus, where the senior party relied on his filing date for reduction to practice and the evidence showed that the junior party prior to that date had built and successfully operated a device embodying the issue, it was *held* that the junior party was entitled to an award of priority, although it appeared that after such reduction to practice he had conceived an auxiliary hold-down device for which he was allowed claims, which, however, were not included in the interference. (Citing *Geltz* v. *Crozier,* 32 App. D. C. 324, and *Kirby* v. *Clements,* 44 App. D. C. 12.)

No. 1076. Patent Appeals. Submitted November 20, 1916. Decided January 9, 1917.

Hearing on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Affirmed.*

The facts are stated in the opinion.

*Mr. Clarence P. Byrnes* and *Mr. George H. Parmelee* for the appellant.

*Mr. Charles C. Linthicum* for the Commissioner of Patents.

Mr. Chief Justice COVINGTON of the Supreme Court of the District of Columbia, who sat with the Court in the hearing and determination of this appeal in the place of Mr. Chief Justice SHEPARD, delivered the opinion of the court:

Appeal from a decision of the Patent Office in an interference proceeding in which priority of invention was awarded Augustus M. Saunders.

The invention relates to a pipe-drawing apparatus and is expressed in four counts, of which we reproduce the first and fourth:

"1. In a pipe-drawing apparatus, a drawbench, an endless draw chain having travel thereon, a welding die, skelp-engaging tongs, and one or more forked dogs having endless travel with the draw chain, and adapted to engage the end of said tongs while the chain is traveling and pull the skelp through the welding die."

"4. Pipe-drawing apparatus having tongs by which the pipe skelp is gripped and drawn through the welding bell, comprising a drawbench having an endless chain thereon, means for continuously driving the chain, and means automatically engaging with the tong reins, adapted to grapple with the reins when the tongs are placed in position on the drawbench and draw skelp in the grip of the tongs lengthwise over the drawbench."

The Examiner of Interferences thus describes the prior art and the invention of the issue:

"In the process of pipe-drawing, a strip of metal heated in the furnace, and known as a skelp, is drawn through a die into the hollow cylindrical form of the finished pipe. The drawing apparatus, old in the art, comprised a drawbench with one end adjacent the furnace containing the heated skelp, an endless chain having travel upon the drawbench, and the welding die adjacent the furnace end of the bench, and through which the skelp is drawn. Tongs are attached to the skelp, the reins of which are in turn attached to the draw chain, and thereby the

skelp is drawn through the die until the complete pipe is formed. Heretofore, the end of the tong rein was manually attached to the endless chain on the drawbench by an attendant. The object of the present invention is to provide an automatic attaching means, so as to dispense with the operator performing this duty. This automatic means, as disclosed in the applications of both parties, comprises forked dogs upon the draw chain, arranged in position to engage the button upon the end of the tong rein, and in the continued travel of the chain to exert the pulling action upon the tongs necessary to draw the skelp through the die."

Since William M. Neckerman (the appellant) has taken no testimony, he is restricted to his filing date of December 14, 1910.

Saunders is one of the superintendents of the National Tube Company, and highly skilled in the art. He introduced evidence which satisfied the Examiner of Interferences of a disclosure and reduction to practice of the invention in the spring of 1910. The Examiners in Chief, after ruling that the first three claims are satisfied by the device which Saunders built and operated and which the Examiner of Interferences ruled amounted to a reduction to practice, concluded that the evidence was not sufficient to warrant an acceptance of the Examiner's conclusion. That the Board was somewhat doubtful of the correctness of its conclusion is apparent from the following: "In closing this decision, we may confess to the fact that in studying the record we have been led to conjecture that Saunders may actually have reduced the invention to practice, as is claimed in his behalf, long prior to Neckerman's filing date." The Assistant Commissioner, to whom Saunders appealed, found no difficulty in sustaining the view of the Examiner of Interferences.

The evidence very clearly shows that just prior to March 30, 1910, a drawbench was equipped by Saunders with the device of the issue. We shall not review the evidence here, since that has been done by the tribunals of the Patent Office. We agree with the Examiner of Interferences and the Assistant Commissioner that this drawbench was successfully operated and that

the completion and utility of this invention was fully demonstrated.

The evidence shows that Saunders, some time subsequent to the installation of his device on a drawbench, conceived the idea of so positioning a curved rod as to prevent the possible disengagement of the tong reins and chain. This additional feature was covered by claims allowed Saunders, but which were not included in this interference. Therefore, so far as this interference is concerned, the successful operation of a machine equipped as the Saunders machine was equipped prior to the addition of this so-called hold-down device constituted reduction to practice of the claims of the issue. And yet Neckerman's principal contention here is that there could be no reduction to practice without the addition of this hold-down device. Since this device is not an element of the issue, we must assume, as indeed the evidence shows, that a drawbench equipped in accordance with the claims as drawn would be operative. In other words, if the conditions were reversed and Saunders was the senior party, relying, as does Neckerman, upon his filing date, he would be entitled to constructive reduction to practice upon the structure of the issue, irrespective of this auxiliary device. What we have said amounts to no more than an affirmation of the oft-repeated rule that claims will be interpreted as drawn. *Kirby* v. *Clements,* 44 App. D. C. 12; *Geltz* v. *Crozier,* 32 App. D. C. 324.

The decision is affirmed.                          *Affirmed.*